**Donald K. MOODY, Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

No. 87–CV–734.

United States District Court,
N.D. New York.

Oct. 18, 1990.

Carleton Bruce Laidlaw, Jr., Syracuse, N.Y., for plaintiff.

U.S. Dept. of Justice, Washington, D.C. (Daniel R. Unumb, Civ. Div., Torts Branch, Washington, D.C., of counsel), for defendant.

## MEMORANDUM–DECISION & ORDER

MUNSON, District Judge.

In June of 1985, the United States Veterans Administration ("the VA") entered into a contract with Bhandari Constructors & Consultants, Inc. and Joseph Davis, Inc. ("Bhandari–Davis"), who agreed to perform general construction and asbestos abatement work at the Veterans Administration Medical Center ("VAMC") in Syracuse, New York. Bhandari–Davis in turn subcontracted work to Snyder Metal Products ("Snyder") and Amaral Neumeyer Construction, Inc. ("Amaral"). On July 28, 1986, plaintiff, an employee of Amaral, was seriously injured while working at the VAMC when he fell through a ventilation shaft.

On June 6, 1987, plaintiff commenced this action against the United States under the Federal Torts Claim Act ("FTCA" or "the Act"), 28 U.S.C. §§ 1346(b), 2671–2680. Plaintiff also joined Bhandari–Davis and Snyder as pendent party defendants. Bhandari–Davis and Snyder later impleaded Amaral as a third-party defendant.

Subsequently, the court dismissed Bhandari–Davis, Snyder, and Amaral from this action pursuant to the Supreme Court's decision in *Finley v. United States*, 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989).[1]

## I. INTRODUCTION

Plaintiff in his complaint asserts three causes of action. First, plaintiff contends that the United States acted negligently in the following respects: covering the ventilation shaft with an unsecured, thin sheet of metal; failing to provide warning signs or other protective barriers around the ventilation shaft; causing the dangerous conditions to exist; failing to provide adequate and proper supervision; failing to ensure that there was adequate help to guarantee safety; failing to provide adequate safety precautions; and failing to adhere to and enforce various federal and state safety regulations. *See* Complaint ¶ 16, Document ("Doc.") 1. Second, plaintiff asserts a claim against the United States for failing to comply with and enforce various federal, state, and local safety regulations. Finally, plaintiff alleges that the United States' conduct also constitutes gross negligence.

The United States presently contends that plaintiff's claims should be dismissed because (1) they are based upon the acts and omissions of independent contractors, 28 U.S.C. § 2671,[2] and (2) are within the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a).[3] Since matters outside the complaint have been presented to the court by both plaintiff and defendant, the court will treat the United States' motion as one for summary judgment under Federal Rule 56. *See* FED.R.CIV.P. 12(b); *Fonte v. Board of Managers of Continental Towers Condominium*, 848 F.2d 24, 25 (2d Cir.1988).

---

**1.** The Supreme Court in *Finley* held that in suits brought under the FTCA, federal subject matter jurisdiction does not extend to pendent party defendants over whom there is no independent jurisdictional base.

**2.** *See infra* at 1045–49.

**3.** *See infra* at 1049–56.

## II. BACKGROUND

### A. *The Contract*

The contract awarded by the VA to Bhandari–Davis in 1985 was for a major renovation project at the VAMC. *See* Defendant's Exhibit ("Def.Ex.") 1, Doc. 46. The contract covered, among other things, replacement of the heat, ventilation, and air conditioning ("HVAC") systems, improvements to the fire and safety systems, and asbestos abatement. Section 01001 of the contract, entitled "General Conditions," set forth the respective rights and duties of the VA and the contractor, that is, Bhandari–Davis. Under clause 1.32 of section 01001, entitled "Permits and Responsibilities," Bhandari–Davis assumed the responsibility of obtaining necessary licenses and permits and complying with applicable federal, state, and municipal law and regulations governing the performance of the work under the contract. Clause 1.32 also provided that Bhandari–Davis agreed that it would be liable "for all damages to persons or property that occur as a result of [its] fault or negligence and shall. take proper safety and health precautions to protect the work, the workers, the public, and property of others."

Under clause 1.38(B), Bhandari–Davis assumed the responsibility of maintaining an inspection system to ensure that its work at the VAMC complied with the contract's specifications. All work performed by Bhandari–Davis, however, was subject to the "general direction of the Contractig [sic] Officer and [was] subject to Government inspection and test at all places and at all reasonable times before acceptance to ensure strict compliance with the terms of the contract." *See also* clause 1.44(A) ("The work will be under the direction of the Veterans Administration Contracting Officer, who may designate another VA employee to act as Resident Engineer at the construction site."). Such government inspections, however, were "for the sole benefit of the Government and [did] not relieve the Contractor of responsibility for providing adequate quality control measures." Clause 1.38(C).

In clause 1.36, entitled "Accident Prevention," the VA transferred the primary duty of ensuring the safety of employees and other persons during the renovation of the VAMC to Bhandari–Davis. In particular, subparagraph (A) obligated Bhandari–Davis to maintain necessary safety barricades, signs, and signal lights, and to comply with applicable Occupational Safety and Health Administration ("OSHA") regulations [4] and any other measures that the VA contracting officer deemed necessary to maintain safety. Bhandari–Davis also was responsible for the acts and omissions of its employees and the employees of its subcontractors, clause 1.46(B), and ensuring its subcontractor's safety compliance. Clause 1.36(D).

The VA did not, however, delegate all responsibilities regarding accident prevention to Bhandari–Davis. Rather, the VA retained what may be characterized as an "oversight" or "policing" role with respect to safety. For example, clause 1.36(C) provided that the VA contracting officer, upon discovery of noncompliance with applicable safety requirements, must notify Bhandari–Davis of such non-compliance and order an appropriate ameliorative response. If Bhandari–Davis failed or refused to take such action, the VA could order all work stopped until such corrective steps were taken. In addition, subparagraph (E) stated that the VA safety officer, namely the Resident Engineer, was responsible for enforcing all safety regulations insofar as they were applicable to the safety of VA employees, visitors, and patients. Subparagraph (E) further provided that the Resident Engineer in executing this responsibility was required to make weekly safety inspections and inform Bhandari–Davis of all violations so that it could take appropriate corrective action.

### B. *The Accident*

After obtaining the above-discussed contract with the VA, Bhandari–Davis subcontracted with Snyder and Amaral. Snyder agreed to perform certain sheet metal work

---

4. The OSHA regulations governing floor openings are found at 29 C.F.R. § 1926.500.

on the HVAC system, while Amaral contracted to undertake asbestos abatement. In January and February of 1986, Amaral was performing asbestos abatement on the tenth floor penthouse area of the VAMC. A ventilation shaft which descended to the basement of the VAMC was located in the penthouse area. Def.Ex. 4, at 44. The shaft was covered by an exhaust fan. The contract called for the removal of the fan, the shaft to be sealed and abandoned, and all shaft openings on the lower floors to be capped. Def.Ex. 5, at 118. Snyder was responsible for the removal of the fan and the capping of lower floor ducts. In addition, Snyder capped the ventilation shaft in the penthouse area, where previously the fan had been affixed, with a piece of sheet metal which was locked into place over the shaft. A piece of heavy, unfastened plywood was then placed over the sheet metal. Some valves and pieces of pipe were placed on top of the plywood to prevent slippage. Def.Ex. 9, at 20.

Amaral's function was to wrap the air ducts with plastic to prevent asbestos from escaping. Def.Ex. 7, at 95–96. On July 28, 1986, plaintiff, an Amaral employee, was sealing air ducts located in the penthouse area. In order to reach the ducts, which were located high on the wall, plaintiff and a co-worker stood on two expansion tanks. Soon thereafter, plaintiff's co-worker jumped off the tank onto the sheet metal covering the air shaft to get some materials. Plaintiff followed. Unfortunately, the covering dislodged and plaintiff descended approximately seventy-five feet through the air shaft. Plaintiff sustained serious injuries to his left knee and back.

## III.  DISCUSSION

The United States' position in support of its motion is that, under the renovation contract, the government delegated full safety responsibility to its general contractor Bhandari–Davis and did not retain the authority to control or supervise Bhandari–Davis' day-to-day operations. The United States contends that because the tortious acts which plaintiff alleges resulted in his injuries were not committed by an employee of the federal government, it can not be held responsible for the alleged inadequacies in Bhandari–Davis' safety program. In addition, the government argues that the discretionary function exception prevents it from being held liable for its failure to supervise Bhandari–Davis' safety compliance.

Plaintiff asserts in response that he is not attempting to hold the United States liable for the negligent acts of its independent contractors.[5] Rather, plaintiff asserts that his claim against the United States is directed against the government's own negligent conduct. Specifically, plaintiff asserts that government employees acted negligently in failing to comply with and enforce safety regulations as required by the contract. Plaintiff contends in this regard that the government's obligation to ensure that safety measures were followed during the renovation project was non-delegable given the inherently dangerous nature of the project. Finally, plaintiff contends that the United States, as owner of the VAMC, had a duty to exercise reasonable care under the circumstances in maintaining its property in a safe condition so as to prevent injury to persons entering that property.

### A.  *Independent Contractor Defense*

#### 1.  Statutory Framework

The FTCA constitutes a limited statutory waiver of the United States' sovereign immunity

> for injury or loss of property, or personal injury or death caused by the negligent

---

**5.** Although plaintiff suggests that he is not attempting to hold the United States liable for the negligent acts of its independent contractors, plaintiff's submissions discuss in some depth the degree of control the United States possessed over Bhandari–Davis' performance of the contract. Therefore, the court feels compelled to address whether the United States retained the degree of control over the performance of the contract sufficient to hold it liable for the negligence of its contractor. The issue of the United States' control over Bhandari–Davis' performance of the contract is also relevant to plaintiff's claims under the New York Labor Law discussed *infra* at 1048–49.

or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. 28 U.S.C. § 1346(b). "[T]he government's waiver of sovereign immunity under the FTCA must be 'strictly construed in favor of the government.'" *Akutowicz v. United States,* 859 F.2d 1122, 1125 (2d Cir.1988).

As defined in the FTCA, an employee of the government includes officers or employees of any federal agency, members of the armed forces, and persons acting on behalf of a federal agency in an official capacity. 28 U.S.C. § 2671. Federal agency in turn is defined in the Act to include "the executive department, the judicial and legislative branches, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States, *but does not include any contractor with the United States."* *Id.* (emphasis added). Accordingly, the FTCA expressly precludes the United States from being held liable for the negligence of its independent contractors, and thus such claims continue to be barred by the doctrine of sovereign immunity. *See Logue v. United States,* 412 U.S. 521, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973); *United States v. Orleans,* 425 U.S. 807, 814, 96 S.Ct. 1971, 1976, 48 L.Ed.2d 390 (1976); *see also Berghoff v. United States,* 737 F.Supp. 199, 201 (S.D.N.Y.1989) ("If a tort claim against the United States falls outside the FTCA's provisions, the claim is barred by the Government's sovereign immunity.").

The Supreme Court held in *Logue v. United States,* 412 U.S. at 528, 93 S.Ct. at 2220, and reaffirmed in *United States v. Orleans,* 425 U.S. at 815, 96 S.Ct. at 1976, that the crucial factor in distinguishing a federal agency from an independent contractor is the United States' authority to control and supervise, on a day-to-day ba-

sis, the detailed physical performance of the contractor. *See, Leone v. United States,* 910 F.2d 46, 49–50 (2d Cir.1990); *Falls Riverway Realty v. City of Niagra Falls,* 754 F.2d 49, 57 (2d Cir.1985); *Hockman v. United States,* 741 F.Supp. 5, 8 (D.D.C.1990) (1990 WL 95514); *Pershing v. United States,* 736 F.Supp. 132, 134 (W.D. Tex.1990); *Berghoff v. United States,* 737 F.Supp. at 202; *Andrulonis v. United States,* 724 F.Supp. 1421, 1483 (N.D.N.Y. 1989); *Markes v. United States,* 704 F.Supp. 337, 338 (N.D.N.Y.1988); *Dirma v. United States,* 695 F.Supp. 714, 720 (E.D. N.Y.1988); *Barrett v. United States,* 660 F.Supp. 1291, 1314 (S.D.N.Y.1987); *Schwab v. United States,* 649 F.Supp. 1319, 1325 (M.D.Fla.1986), *aff'd,* 823 F.2d 556 (11th Cir.1987). "Whether a person is a government employee or an independent contractor is a question of federal law." *Leone v. United States,* 910 F.2d at 49.

2. Analysis

a. *The contract*

■ The starting point for assessing the government's degree of control is the contract itself. *See Mocklin v. The Orleans Levee District,* 690 F.Supp. 527, 529 (E.D. La.1988), *aff'd on other grounds,* 877 F.2d 427 (5th Cir.1989). As noted earlier in this opinion, in the contract with Bhandari–Davis, the VA delegated many responsibilities and obligations with respect to performance and safety. The VA, however, retained certain rights to ensure that Bhandari–Davis complied with contractual specifications and maintained a safe work environment. For the reasons discussed below, the court holds that the government's contractual reservation of such rights does not constitute the degree of control over Bhandari–Davis' day-to-day operations such that the government may be held liable for the negligence of Bhandari–Davis' employees.[6]

■ Plaintiff contends that the government acted negligently in failing to enforce the various safety and health regulations as specified in clause 1.36 of the contract.

---

6. In reaching this decision, the court does not make any finding with regard to the actual

negligence of Bhandari–Davis' employees or its subcontractor's employees.

This contention, however, presupposes the existence of a duty owing to plaintiff. The fact that the contract incorporates federal regulations and standards, however, does not in itself "convert the acts of entrepreneurs ... into federal governmental acts." *United States v. Orleans*, 425 U.S. at 816, 96 S.Ct. at 1976–77. Indeed, clauses 1.36(A) and 1.32 specifically provided that it was the primary responsibility of Bhandari–Davis, not the United States, to comply with applicable safety and health regulations and otherwise ensure the safety of employees, such as plaintiff, during the performance of the contract. By retaining the duty to notify Bhandari–Davis of noncompliance with the contract's safety requirements, to order Bhandari–Davis to undertake the required corrective action, and to stop work if satisfactory corrective action was not taken, the government retained nothing more than an oversight role with regard to the safety of employees of Bhandari–Davis.[7] When the government merely acts as an overseer, and neither manages the details of the contractor's work nor supervises its daily performance, the government has not exercised the degree of control necessary to hold the government liable for the negligent acts or omissions of the contractor's employees. *See Leone v. United States*, 910 F.2d at 50; *see also Dirma v. United States*, 695 F.Supp. at 720 n. 2 ("Where the Government actively participates in the operation of the project, i.e., managing details of the work and supervising employees directly, it may be necessary to impose a duty of care not imposed when the degree of the Government's control is merely one of an overseer.").

Moreover, there is abundant case law supporting the proposition that the strict control test is not satisfied simply because the government retained the right to inspect the progress of Bhandari–Davis' work, notify Bhandari–Davis of its noncompliance with contractual specifications or safety standards, specify what action should be taken to cure such noncompliance, and even order work stopped until such compliance is achieved. *See, Lipka v. United States*, 369 F.2d 288, 291 (2d Cir. 1966), *cert. denied*, 387 U.S. 935, 87 S.Ct. 2061, 18 L.Ed.2d 997 (1967); *Lathers v. Penguin Industries*, 687 F.2d 69, 73–74 (5th Cir.1982); *Berghoff v. United States*, 737 F.Supp. at 202; *Pershing v. United States*, 736 F.Supp. at 134; *Markes v. United States*, 704 F.Supp. at 338; *Dirma v. United States*, 695 F.Supp. at 720; *Mocklin v. Orleans Levee Dist.*, 690 F.Supp. at 529; *Schwab v. United States*, 649 F.Supp. at 1325; *Maltais v. United States*, 546 F.Supp. 96, 100–01 (N.D.N.Y. 1982), *aff'd*, 729 F.2d 1442 (2d Cir.1983).

Furthermore, there is no indication in the extensive deposition testimony submitted by the parties that the United States through its agents exercised a greater degree of control over performance of the contract than that contemplated by the contract. On the contrary, the deposition testimony confirms that the day-to-day performance of the contract was not supervised by the VA and that the VA delegated the primary responsibility of maintaining the safety of non-VA personnel to Bhandari–Davis. For example, James P. Resig, a Bhandari–Davis representative involved in the VA contract, stated at his deposition that in performing under the contract Bhandari–Davis had "the ability to determine how to carry that work out in order to meet the requirements stipulated in the

---

**7.** The government's limited oversight role with respect to the safety of non-governmental employees can be contrasted with the more active responsibility the government possessed with regard to the safety of VA employees, patients, and visitors. In clause 1.36(E) the government's resident engineer was designated the VA safety officer responsible for enforcing safety regulations insofar as they applied to the safety of VA employees, visitors, and patients. The government was required to undertake weekly inspections and notify the contractor of all health and safety violations. Plaintiff throughout his submissions confuses the government's primary contractual obligation that it assumed with regard to the safety of VA employees, patients, and visitors in clause 1.36(E) with the government's limited oversight duty involving the safety of the employees of Bhandari–Davis specified in clause 1.36(A) and (C). Plaintiff also confuses the VA's degree of control in monitoring Bhandari–Davis' compliance with the contract's quality specifications and its control over Bhandari–Davis' safety compliance.

[contract] specifications," and that no United States employees worked directly with Bhandari–Davis employees on a day-to-day basis in the performance of the construction work. Resig Deposition, Def. Ex. 4, Doc. 45, at 118. Furthermore, the deposition testimony also corroborates that the extent of the VA's primary safety responsibility as exercised during the performance of the renovation work was limited to the enforcement of safety regulations related to the protection of VA employees, patients, visitors, and the facility itself. *See, e.g.,* Price Deposition, Plaintiff's Exhibit ("Pl.Ex.") A, Doc. 52, and Def. Ex. 11, Doc. 45, at 11, 25, 54–55; Eney Deposition, Pl.Ex. B at 24, 26; Heaton Deposition, Pl.Ex. C at 15.

Accordingly, as the government delegated primary responsibility for the maintenance of safety with respect to non-VA personnel to Bhandari–Davis, the government did not exercise the requisite degree of control over Bhandari–Davis' performance of the contract sufficient to hold it liable for the negligent acts or omissions of Bhandari–Davis' employees.[8]

b. *The United States' duty of care under the New York Labor Law*

Plaintiff also contends that the United States violated duties owing to plaintiff under the New York Labor Law. Under 28 U.S.C. § 1346(b), the government's tort liability is limited to those torts committed by government employees "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Akutowicz,* 859 F.2d at 1125; *C.P. Chemical Co. v. United States,* 810 F.2d 34, 37 (2d

Cir.1987); *Caban v. United States,* 728 F.2d 68, 72 (2d Cir.1984). In plaintiff's second cause of action he alleges that the government failed to enforce and comply with sections 200, 240, 241 and 241–a of the New York Labor Law. The United States contends that none of these sections provide a basis for liability. Plaintiff in his submissions in opposition to the United States' motion, however, does not discuss sections 240, 241 and 241–a. The court deems plaintiff's failure to discuss these sections to be a concession that he cannot maintain a cause of action under sections 240, 241, and 241–a.[9]

■■■■ Plaintiff does continue to argue, however, that section 200 of the Labor Law, as well as certain common law duties of owners of property, provide a basis for liability against the United States. Section 200 codifies the common law duty of owners and contractors to provide construction site workers with a safe work place.[10] *See, e.g., Nagel v. Metzger,* 103 A.D.2d 1, 10, 478 N.Y.S.2d 737, 743 (4th Dep't 1984); *Copertino v. Ward,* 100 A.D.2d 565, 567, 473 N.Y.S.2d 494, 497 (2d Dep't 1984); *Da-Bolt v. Bethlehem Steel Corp.,* 92 A.D.2d 70, 72, 459 N.Y.S.2d 503, 505 (4th Dep't 1983). Generally, an owner can not be held liable to injured workers for inadequacies in its independent contractor's or subcontractor's "own plant, tools and methods of work." *Copertino v. Ward,* 100 A.D.2d at 567, 473 N.Y.S.2d at 498. However, if an owner exercised supervision or control over performance of the work or had actual or constructive notice of the unsafe condition causing the accident, then an owner may be liable under section 200. *See DaBolt v. Bethlehem Steel Corp.,* 92 A.D.2d at 72,

---

**8.** Whether the United States' failure to supervise the removal of the fan and the covering of the ventilation shaft provides a basis for liability will be analyzed below in the context of the court's discussion of the discretionary function exception to the FTCA. *See infra* at 17–34.

**9.** Moreover, it is well settled that the United States cannot be held liable without fault. *Laird v. Nelms,* 406 U.S. 797, 92 S.Ct. 1899, 32 L.Ed.2d 499 (1972). Accordingly, state law that imposes liability on landowners without fault

cannot be applied against the United States. Since sections 240, 241, and 241–a create non-delegable duties which would allow the imposition of liability on a non-negligent defendant, they cannot be applied against the United States. *Maltais v. United States,* 546 F.Supp. at 101; *Berghoff v. United States,* 737 F.Supp. at 203–04.

**10.** Since section 200 codifies common law duties, the court will discuss plaintiff's common law claims under the same analysis as plaintiff's section 200 claim.

459 N.Y.S.2d at 505.[11] Based upon the court's above discussion regarding the United States' lack of control over Bhandari–Davis' performance of the contract, the first basis for liability under section 200 in this case is not established. As to the government's notice of the alleged unsafe covering of the ventilation shaft, it is plaintiff's contention that "United States employees conducted frequent 'safety' inspections of the construction project work areas *but never detected the unsafe covering over the air shaft.*" Plaintiff's Local Rule 10(j) Statement, Doc. 54, at ¶ 14. Thus, by plaintiff's own representation the government did not have notice of the alleged unsafe condition. *See also* Plaintiff's Memorandum of Law, Doc. 51, at 25 ("The abysmal ignorance of the government's Resident Engineer and Safety Officer, James Price, is borne out by his testimony that he was unaware of the existence of the ten story air shaft plaintiff fell into even though the contract which he administered clearly set forth work to be done on the shaft and obviously appeared in the contract specifications and hospital blueprints in his possession."). Accordingly, with neither of the contingencies for liability satisfied in the present case, section 200 of the New York Labor Law provides no basis for relief against the United States.

## B. *Discretionary Function Exception*

The court has determined that the renovation contract delegated primary responsibility for maintaining the safety of non-VA personnel to Bhandari–Davis and therefore the United States can not be held liable for the negligence of Bhandari–Davis' employees. As noted, however, the United States did retain an oversight role with respect to the safety of non-VA personnel. Plaintiff alleges that the United States acted negligently in failing to supervise the contractor's compliance with safety regulations.

The United States contends that this claim is barred by the discretionary function exception to the FTCA. Specifically, the United States argues that the VA's determinations with regard to whether to require its contractor to adopt a specific safety program and the manner in which it would exercise its right to require safety compliance involve protected policy judgments. In response, plaintiff argues that the "acts of federal employees in carrying out supervisory duties and in insuring compliance with established safety regulations mandated by the basic VA contract are ministerial in nature only and do not rise to the level of permissible exercise of policy judgment that is protected in the FTCA by the discretionary function exemption." Plaintiff's Memorandum of Law, Doc. 51, at 29.

### 1. Statutory Framework

Under 28 U.S.C. § 2680(a), the FTCA's waiver of the United States' sovereign immunity does not extend to "[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." [12] In determining whether an action against the United States is barred by the discretionary function exception, a court must first assess whether the nature of the challenged conduct involves "a matter of choice for the acting employee." *Berkovitz v. United*

---

**11.** There is some question whether a finding of control *and* notice are both prerequisites to establishing liability under section 200. Some New York courts discuss control and notice in the disjunctive, *see, e.g., DeCrisci v. P & C Food Markets, Inc.,* 107 A.D.2d 1029, 486 N.Y.S.2d 512 (4th Dep't 1985); *Nagel v. Metzger,* 103 A.D.2d at 9, 478 N.Y.S.2d at 742 (4th Dep't 1984), while others discuss it in the conjunctive, *see, e.g., Kalofonos v. State of New York,* 115 Misc.2d 692, 700, 454 N.Y.S.2d 645, 652 (Ct.Cl.1982), *aff'd,* 104 A.D.2d 75, 481 N.Y.S.2d 415 (2d Dep't. 1984).

**12.** Because by its terms the discretionary function exception is applicable whether or not discretion involved be abused, "[i]f a discretionary function was involved, the fact that critical factors were not considered or that the decision was negligently made will not bring the challenged conduct outside of the exception." *Ayer v. United States,* 902 F.2d 1038, 1041 (1st Cir. 1990); *accord Flynn v. United States,* 902 F.2d 1524, 1530 (10th Cir.1990).

*States,* 486 U.S. 531, 536, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988); *In re Joint Eastern & Southern Districts Asbestos Litigation,* 891 F.2d 31, 34 (2d Cir.1989). If a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," the discretionary function exception is inapplicable. *Berkovitz,* 486 U.S. at 536, 108 S.Ct. at 1958; *Dalehite v. United States,* 346 U.S. 15, 34, 73 S.Ct. 956, 967, 97 L.Ed. 1427 (1953). If the challenged conduct does involve a degree of choice, the court must then evaluate whether that choice is of a type that the discretionary function exception was intended to apply. *Berkovitz,* 486 U.S. at 536, 108 S.Ct. at 1958. Congress' purpose in carving out the discretionary function exception was "to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. Varig Airlines,* 467 U.S. 797, 814, 104 S.Ct. 2755, 2765, 81 L.Ed.2d 660 (1984). Accordingly, only those actions and decisions related to public policy concerns are within the discretionary function exception.[13]

### 2. *Varig* and *Berkovitz*

The proper application of these principles is illustrated by the Supreme Court's decisions in *United States v. Varig Airlines* and *Berkovitz v. United States.* In *Varig,* victims of airplane accidents sued the Federal Aviation Administration ("FAA") for negligently certifying certain airplanes for operation without first inspecting them. The FAA had developed a "spot-checking" system for maintaining airplane safety. Under this system the primary responsibility for ensuring that an aircraft met safety regulations was placed upon the manufacturer and the operator. The FAA retained the responsibility of policing compliance. The plaintiffs' claim that the FAA acted negligently in failing to inspect certain planes challenged two aspects of the FAA's certification procedure: the decision to implement the spot check system and the actual execution of that system.

The Supreme Court held that both aspects of the FAA's conduct were within the discretionary function exception. *Varig,* 467 U.S. at 819, 104 S.Ct. at 2767. First, the Court held that the FAA's spot checking program involved a policy determination as to the best means for "accomodat[ing] the goal of air transportation safety and the reality of finite agency resources." *Id.* at 820, 104 S.Ct. at 2768. Second, the Court held that the FAA employees who executed the program were authorized to make policy choices with respect to "the degree of confidence that might reasonably be placed in a given manufacturer, the need to maximize compliance with FAA regulations, and the efficient allocation of agency resources." *Id.* Accordingly, the Court held that the FAA's alleged negligence was not actionable under the FTCA.

In *Berkovitz,* a two month old infant contracted polio after ingesting a dose of the drug, Orimune, an oral polio vaccine manufactured by Lederle Laboratories. The disease left the child paralyzed and unable to breath without a respirator. The infant and his parents brought suit claiming that the United States acted wrongfully in licensing Lederle to manufacture Orimune and in approving the public release of the particular vaccine lot which contained the dose the infant ingested.

The Court held that insofar as plaintiffs alleged that the government issued a license to Lederle without first receiving data regarding how the product matched with safety standards, this conduct did not fall within the discretionary function exception because under the applicable statutory and regulatory scheme the government possessed no discretion to issue a license without first obtaining the necessary scientific data. *Berkovitz,* 486 U.S. at 543, 108 S.Ct. at 1962. Similarly, the Court held that to the extent plaintiffs alleged that the

---

13. In determining whether policy concerns are implicated, "the relevant question is not whether an explicit balancing is proved, but whether the decision is susceptible to policy analysis." *United States Fidelity & Guarantee Co. v. United States,* 837 F.2d 116, 120 (3d Cir.), *cert. denied,* 487 U.S. 1235, 108 S.Ct. 2902, 101 L.Ed.2d 935 (1988) (quoted with approval in *In Re Joint Eastern & Southern Districts Asbestos Litigation,* 891 F.2d at 37).

government issued the license without first determining whether the vaccine complied with applicable safety regulations, the discretionary function exception did not apply because federal law specifically required that such a determination be made prior to issuing a license. *Id.* at 544, 108 S.Ct. at 1962.[11]

The Court next examined plaintiffs' claim that the government wrongfully released the particular vaccine lot that caused Berkovitz to contract polio. Under regulations applicable to the release of vaccine lots, the manufacturer was obligated to examine all lots prior to public release. The regulations, however, did not impose this same duty on the government. While the government had authority to examine any vaccine lot and prevent distribution, the government was not obligated to take such action in all cases. The Court held that the discretionary function exception barred any challenge to the government's "formulation of policy as to the appropriate way in which to regulate the release of vaccine lots." *Id.* at 546, 108 S.Ct. at 1964. The Court thus held that if the programs actually adopted left room for government officials to exercise independent policy judgments such acts would be protected. Since the plaintiffs had alleged that the government had adopted a policy of testing all vaccine lots for safety compliance, which thus left no room for policy judgments, plaintiffs' claim survived the government's motion to dismiss.

3. Analysis

■ In the present case, plaintiff's claim that the VA acted negligently in failing to supervise the enforcement of safety regulations regarding the covering of the ventilation shaft arguably challenges two separate acts of the VA: (1) delegating primary safety responsibility to its contractors and (2) implementing its contractual oversight role with respect to the safety of non-VA personnel working on the construction site. However, plaintiff states that he "is not challenging the government's authority to

delegate safety responsibility and promulgate safety rules and regulations in its construction contracts." Plaintiff's Memorandum of Law, Doc. 51, at 37. Thus, the only aspect of the government's conduct which the court must evaluate in terms of the discretionary function exception is the VA's execution of its contractual oversight function.

Plaintiff contends that under the contract VA employees had no discretion with regard to ensuring that OSHA safety and health regulations were met during the renovation project. *Id.* at 32. Plaintiff maintains that the VA retained the specific contractual obligations of monitoring the contractor's compliance with the contract's Accident Prevention clause, conducting weekly inspections of the VAMC for safety violations, and ensuring Bhandari–Davis' compliance with the contract. Despite these alleged non-discretionary obligations, plaintiff asserts that the government failed to recognize that uncovering the ventilation shaft posed a serious potential hazard, failed to inspect the cover to determine whether applicable OSHA safety standards had been met, failed to constantly monitor the cover to ensure that it remained undisturbed, and failed to notify the contractor of its noncompliance. *Id.* at 38.

In the court's opinion plaintiff overstates the extent of the VA's contractual safety obligation and understates the extent of the VA's discretion in exercising that contractual obligation. As noted earlier, *see supra* at note 4, plaintiff confuses the VA's contractual safety obligation regarding non-VA personnel with its contractual safety obligation regarding VA employees, patients, and visitors. The Accident Prevention clause specifically delegated the primary safety obligation with regard to non-VA personnel, such as plaintiff, to Bhandari–Davis while reserving for the VA what has been referred to in this opinion as an oversight role. *See* clause 1.36(A), Def.Ex. 1, Doc. 46. The scope of this over-

---

**14.** The Court remanded the question of whether government officials exercise policy judgments in determining that a vaccine complies with applicable safety regulations.

sight or "policing" role is outlined in clause 1.36(C), which provides as follows:

> The Contracting Officer *shall notify* the Contractor of any noncompliance with [applicable safety] requirements and of the corrective action required. This notice, when delivered to the Contractor or the Contractor's representative at the site of the work, shall be deemed sufficient notice of noncompliance and corrective action required. After receiving the notice, the Contractor shall immediately take corrective action. If the Contractor fails or refuses to take corrective action promptly, the Contracting Officer *may* issue an order stopping all or part of the work until satisfactory corrective action has been taken. The Contractor shall not base any claim or request for equitable adjustment for additional time or money on any stop order issued under these circumstances.

(emphasis added). In contrast with the VA's limited obligation under clause 1.36(C) to notify Bhandari–Davis of its noncompliance and specify the required corrective action, clause 1.36(E) assigned to the VA the primary safety obligation with regard to VA employees, visitors, and patients. It states as follows:

> The Resident Engineer on all assigned construction project[s] is designated as the VA Safety Officer, and as such is responsible for enforcing all safety regulations *as they apply to the safety of Veterans Administration employees, visitors, and patients.* Regular safety inspections shall be conducted by the Resident Engineer weekly and all noted violations of safety and health regulations shall be brought to the attention of the Contractor who shall take immediate action to correct such violations. If Corrective action is not taken promptly, a copy of the Resident Engineer's report will be forwarded to the Department of Labor. *These inspections in no way relieve the Contractor from full compliance with the responsibilities outlined in paragraph C of this clause.*

(emphasis added). Thus, as illustrated by the contract's own language, the scope of VA's contractual safety obligation vis-a-vis non-VA personnel is not as expansive as plaintiff contends.

Furthermore, under clause 1.36(C) the VA did retain discretion in the implementation and exercise of its oversight role. The only mandatory, non-discretionary function contained in clause 1.36(C) is the VA's duty to notify Bhandari–Davis if any noncompliance with applicable safety regulations is detected. The duty to notify once noncompliance is detected leaves no room for policy judgments and thus an allegation that the government failed to notify Bhandari–Davis after discovering such noncompliance would not implicate the discretionary function exception. *See Judy v. United States Department of Labor,* 864 F.2d 83, 84 (8th Cir.1988). No such claim is made in this case, however. Plaintiff does not contend that government employees determined that the covering of the ventilation shaft was not in compliance with applicable regulations yet failed to notify Bhandari–Davis. Rather, plaintiff claims that "despite numerous inspections, the government failed to recognize the uncovering of the ventilation shaft as a serious potential hazard." Plaintiff's Memorandum of Law, Doc. 51, at 38.

The VA's alleged negligence in failing to monitor and inspect the ventilation shaft covering and in failing to recognize that the covering posed a significant safety hazard is squarely directed at the VA's exercise of its contractual discretion. While clause 1.36(C) imposes the mandatory, non-discretionary duty upon the VA to *notify* Bhandari–Davis after detecting noncompliance, it does not impose any mandatory obligations with respect to the manner in which the VA is to go about detecting such noncompliance. In other words, clause 1.36(C) does not specify how the VA is to implement its oversight role. Unlike clause 1.36(E), clause 1.36(C) does not mandate that weekly inspections be conducted to monitor safety violations. Indeed, clause 1.36 does not specify any course of action that VA employees are obligated to perform to discover Bhandari–Davis' noncompliance. Such determination is left entirely to the discretion of VA employees.

Therefore, plaintiff's contention that all decisions regarding construction site safety were previously made in the OSHA regulations is incorrect. Plaintiff's Memorandum of Law, Doc. 51, at 33. The VA retained broad discretion in determining the method by which its contractor's noncompliance with safety regulations would be discovered. Accordingly, the first prong of the *Berkovitz* test is present in this case. *See supra* at 1049–50.

The court further holds that the nature of the VA's discretion in determining the manner in which safety violations would be detected implicates a significant public policy judgment of a type which the discretionary function exception was intended to encompass. James Price, the VA's Senior Resident Engineer on the VAMC project, avers in his declaration that

> [t]he Resident Engineer staff was not required to follow any mandatory checklist with respect to safety concerning this construction project.... The details of the Resident Engineer's staff's safety review procedures could and did vary depending upon the staff's evaluation of such factors as the degree of impact on patients, visitors or employees of the hospital or the physical integrity of the building, the relative severity and likelihood of occurrence of any potential safety hazard, status of the job, confidence in the contractor, technical expertise required, time commitments necessary for quality control and contract administration and hospital administration concerns.

Def.Ex. 14, Doc. 45, at ¶¶ 4–5. The Supreme Court in *Varig* held that the policy judgments of FAA employees in executing the "spotcheck" program discussed above were protected from liability under the discretionary function exception. As James Price's declaration indicates, many of the same policy considerations which the Court in *Varig* held were protected under the discretionary function exception, namely the degree of confidence placed in the contractor and the efficient distribution of agency resources, were implicated with respect to the VA's implementation of its contractual oversight function. Moreover, like the FAA in *Varig*, the VA delegated primary safety responsibility while retaining a mere policing role. Thus, plaintiff's attempt to distinguish *Varig* from the present case founders on his erroneous assumption that the VA contract provided no room for the exercise of discretion.[15]

Moreover, the cases cited by plaintiff in support of his argument that the VA's conduct in this case is not protected by the discretionary function exception are easily distinguished. The first case cited by plaintiff is *Aslakson v. United States*, 790 F.2d 688 (8th Cir.1986). In *Aslakson*, plaintiff's son was killed in a boating accident on Devil's Lake, North Dakota, when the mast of his sailboat touched an electrical power line owned and operated by the United States. Plaintiff alleged that the United States acted negligently in failing to provide sufficient distance between the water's surface and the power line. At the

---

**15.** The court also finds unpersuasive plaintiff's contention that Judge Miner's decision in *Maltais v. United States*, 546 F.Supp. 96 (N.D.N.Y.), *aff'd*, 729 F.2d 1442 (2d Cir.1983), is wholly inapplicable in this case. In *Maltais*, plaintiff brought suit against the United States under the FTCA seeking recovery for the death of her husband. Arthur Maltais fell to his death while working on a construction site at the Knolls Atomic Power Laboratory owned by the United States. Prior to Arthur Maltais' death the government had entered into a construction contract with General Electric in which the United States delegated primary safety responsibility to General Electric. The United States retained the right to inspect General Electric's work and to stop work if violations were reported. Judge Miner held the government's "reluc-

tance to attempt to monitor day to day safety procedures, while it retains both the right of inspection and the right to stop work if serious violations are reported, demonstrates discretionary policy considerations which required a weighing of various concerns for public safety against administrative impracticability of maintaining a large inspection staff." *Id.* at 101. Judge Miner held that these policy judgments were shielded from FTCA liability. Although *Maltais* appears to have involved only a challenge to the government's delegation of primary safety responsibility to its independent contractor, General Electric, policy judgments similar to those made in *Maltais* also were implicated in the VA's implementation of its oversight function.

time the particular power line was installed it complied with applicable safety regulations and passed entirely over land. Subsequently, the water level of Devil's Lake rose and the power lines eventually passed over Devil's Lake. United States' employees later conducted a field inspection of the lake and determined that the distance between the power lines and the water could pose a safety hazard to tall boats. Therefore, the United States elevated the power lines over the main part of the Lake but maintained the existing clearance levels on a remote portion of the lake called Creel Bay. Plaintiff's son's accident occurred on Creel Bay.

Under applicable regulations, the United States was required to elevate existing power lines which originally conformed with governing safety standards when constructed if safety reasons so required. The Eighth Circuit held that the United States' employees' determination that the existing clearance levels over Creel Bay did not pose a safety hazard did not involve the type of judgment protected by the discretionary function exception. Rather, the court held that the plaintiff's

> challenge to the governmental activity involved here goes not to the policy itself or to the manner in which [the United States] chose to implement that policy. Furthermore, the challenged conduct is neither regulatory in nature nor administrative decision-making grounded in social, economic, or political policy. Rather, Aslakson claims United States' officials were guilty of failing to comply with their own safety policy in the maintenance of their electrical transmission lines.

*Id.* at 693. Unlike the plaintiff in *Aslakson*, plaintiff's claimed negligence on the part of VA employees is in fact directed at the manner in which they chose to implement their contractual oversight role. How that oversight role was to be exercised necessarily involved a wide range of policy concerns of a type protected by the discretionary function exception. Accordingly, *Aslakson* provides no support for plaintiff's contention.

The next case cited by plaintiff is *Camozzi v. Roland/Miller & Hope Consulting Group*, 866 F.2d 287 (9th Cir.1989). *Camozzi* involved a factual context quite similar to the present case. In *Camozzi*, plaintiffs were injured during the construction of a United States Post Office in Petaluma, California, when they fell through an unguarded opening on the second floor. Both plaintiffs were employees of Roebbelen Construction Company. The United States Postal Service ("USPS") contracted with Roebbelen to serve as general contractor on the construction project. USPS also contracted with the Roland/Miller Associates and Hope Consulting Group ("Roland/Miller") to supervise the construction of the project. Plaintiffs contended that under the contract with Roebbelen USPS retained responsibility for overseeing compliance with safety precautions and contracted with Roland/Miller to fulfill that responsibility. Plaintiffs alleged that their injuries were caused by the USPS' negligence in performing its retained safety obligations.

The contract between USPS and Roebbelen contained many provisions similar to the contract between the VA and Bhandari–Davis. For example, Roebbelen was obligated to take proper safety precautions to protect workers, the public, and property including complying with OSHA regulations. The contract also provided that the work was to be performed under the general direction of the contracting officer and the USPS retained the right to reject all work not conforming with the contract specifications. USPS also retained the authority to cancel the contract for Roebbelen's failure to comply with health and safety standards. Moreover, in the contract between USPS and Roland/Miller, Roland/Miller assumed the responsibility for administering the contract with Roebbelen. In fulfilling this obligation Roland/Miller was designated USPS' onsite technical representative and was responsible for the following duties: monitoring the contractor's safety plan; recording all accidents daily; making weekly reports; reviewing safety with the contractor at monthly meetings; making daily inspections of the contractor's

performance to determine contract compliance; and making daily inspections of 35 items, including floor openings.

As in the present case, the plaintiffs in *Camozzi* were not challenging the government's delegation of safety responsibility to its contractor. Rather, plaintiffs contended, as does plaintiff here, that the government acted negligently in policing Roebbelen's compliance with safety standards. The Ninth Circuit held that the government's exercise of its policing role did not come within the discretionary function exception. The court reasoned that

> the alleged negligence upon which plaintiffs rely—the negligence of USPS in performing its retained safety functions—involved no policy choices. Failure to inspect floors for uncovered and unguarded openings, for example, was not the result of a policy choice by the particular employees or agents involved. It was simply a failure to effectuate policy choices already made and incorporated in the contracts.

*Id.* at 290.

Despite the above noted similarities between the contract involved in *Camozzi* and the present contract, there is a significant difference. The USPS through Roland/Miller assumed far greater specific contractual obligations with respect to *overall* safety than did the VA. The VA in this case, while retaining primary responsibility for the safety of VA personnel and assuming the duty to make weekly inspections, did not assume any specific contractual obligations with regard to the safety of non-VA personnel such as plaintiff. Rather, the contract gave the VA broad discretion in determining how it would police Bhandari–Davis' compliance. Thus, unlike the contract in *Camozzi*, the VA contract did not make policy choices with respect to how the VA was to effectuate its retained obligation to oversee Bhandari–Davis' safety compliance. Accordingly, *Camozzi* also does not support plaintiff's contention that the VA's conduct is not protected by the discretionary function exception.

Similarly, *McMichael v. United States*, 856 F.2d 1026 (8th Cir.1988), is also distinguishable from this action. In *McMichael*, the United States Department of Defense ("DOD") entered into a contract with Celesco Industries to manufacture explosive photo flash cartridges. In March of 1976, an explosion occurred at the Celesco plant killing seven employees and injuring several others. Plaintiffs brought suit against the United States under the FTCA. In the contract the United States delegated primary safety responsibility to Celesco. However, the United States also provided Celesco with three on-site inspectors whose duties included monitoring Celesco's compliance with the contract's quality requirements and safety review. Under established DOD procedures, the inspectors were required to follow a fifty-one step checklist for safety compliance. Item sixteen on this list mandated that in the event of an electrical storm the inspector was to evacuate the plant. On the date of the explosion there was rain, thunder, and lightning in the area. No evacuation, however, was ordered. The district court held that the government inspectors were negligent in failing to evacuate until after the storm passed and this was the proximate cause of the employees' injuries. On appeal the Eighth Circuit held that since DOD procedures specifically dictated the course the safety inspectors were to take in the event of an electrical storm, namely evacuation, the inspector retained no discretion. Thus, the court held that the discretionary function exception was inapplicable.

The absence of any available discretion in *McMichael* is in stark contrast with the degree of discretion VA officials possessed in implementing their safety role. No mandatory checklist for safety compliance governed VA personnel. No specific directive in the contract or any VA policy called for its employees, in executing its safety oversight role, check whether the ventilation shaft was securely and safely covered. Moreover, having delegated primary responsibility to Bhandari–Davis to comply with applicable OSHA regulations, including those applicable to the ventilation shaft, VA employees possessed broad dis-

cretion in determining the manner by which they would police Bhandari–Davis' compliance with those safety regulations.[16]

Accordingly, the court holds that the United States' alleged failure to supervise its contractor's safety compliance comes within the discretionary function exception to the FTCA. Even if the United States would be deemed to have acted negligently under New York State common or statutory law for failing to adequately supervise its contractor's safety compliance, the United States may not be held liable for such conduct. *See supra* note 12.

## IV. CONCLUSION

In sum, the United States may not be held liable either for the negligence of its contractor's employees or for its own negligence in failing to supervise its contractor's safety compliance. The United States' motion for summary judgment is granted. The clerk of the court is directed to enter judgment for the United States.

It is So Ordered.

---

**16.** *Hurst v. United States,* 882 F.2d 306 (8th Cir.1989), is also distinguishable in that the employees of the Army Corps of Engineers were bound by regulations which specifically dictated their course of action and thus left no room for discretion.