Joanna ANDRULONIS, Individually and as Conservator of the Property of Jerome Andrulonis, Plaintiffs–Appellees/Cross–Appellants,

v.

UNITED STATES of America, Glatt Air Techniques, Inc.; Glatt GmbH; Wisconsin Alumni Research Foundation, Inc.; Warf Institute, Inc.; Raltech Scientific Services, Inc., Ralston Purina Company; Eli Lilly and Company; and John L. Thompson and Sons and Company, Defendants,

United States of America, Defendant–Appellant/Cross–Appellee.

Nos. 61, 62 and 506.
Dockets 89–6274, 90–6016 and 90–6028.

United States Court of Appeals, Second Circuit.

Argued Sept. 11, 1990.

Decided Dec. 30, 1991.

Michael S. Buskus, Albany, N.Y., Asst. Atty. Gen. of State of N.Y. (Robert Abrams, Atty. Gen. of State of N.Y., Peter H. Schiff, Deputy Sol. Gen., of counsel), for third-party defendant-appellant N.Y.S. Dept. of Health.

William G. Cole, Washington, DC, Appellate Staff Atty., Civ. Div., Dept. of Justice (Stuart M. Gerson, Asst. Atty. Gen., Dept. of Justice, Robert M. Greenspan, Staff Atty., Civ. Div., Frederick J. Scullin, U.S. Atty. for N.D.N.Y., of counsel), for U.S.

James D. Featherstonhaugh, Albany, N.Y. (Roemer & Featherstonhaugh, John R. Mineaux, of counsel), for plaintiffs-appellees/cross-appellants.

Before PRATT, MAHONEY and WALKER, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

The Supreme Court, —— U.S. ——, 112 S.Ct. 39, 116 L.Ed.2d 18, has remanded this case to us for further consideration of the discretionary function exception to the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671–2680, ("FTCA"), in light of its opinion in *United States v. Gaubert*, —— U.S. ——, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). After considering additional briefs submitted by the parties, we conclude for the reasons that follow that *Gaubert* does not undermine our original opinion, which is reported as *Andrulonis v. United States*, 924 F.2d 1210 (2d Cir.1991). Therefore, we reinstate our previous opinion that affirmed in part and reversed and remanded in part the judgment of the district court.

## I. BACKGROUND

This negligence action was brought under the FTCA against the United States,

which filed a third-party complaint for contribution against the State of New York. For a full statement of the facts and circumstances of this case, see our original opinion, familiarity with which is assumed. Here, we will mention only those facts which bear directly on this opinion.

Jerome Andrulonis was a 34–year–old bacteriologist employed by the New York State Department of Health ("NYSDOH") when he contracted the disease of rabies while conducting a laboratory experiment. He became tragically ill and suffered severe and permanent injuries as a result of the disease. The tragic experiment took place in the state-operated Griffin Laboratories, under the supervision of Dr. John G. Debbie, also a scientist employed by NYSDOH. The rabies viral strain used in the experiment was provided by Dr. George M. Baer, a federal government scientist from the Center for Disease Control ("CDC"), who also observed the experiment.

The district court found the government liable in negligence for Andrulonis's injuries, and also found NYSDOH liable for 65 percent of the damages on the government's contribution claim. The government's liability was based on a finding that Dr. Baer had a duty to warn about the obviously dangerous conditions he should have noticed in the laboratory when the rabies virus he had supplied was being used. By neglecting to warn, Dr. Baer exposed the government to tort liability. In so finding, the district court also held that the discretionary function exception to the FTCA was inapplicable in this case.

In our earlier opinion, we affirmed the district court's finding of liability against the government as well as its finding on the contribution claim. We also agreed with the district court's conclusion that the discretionary function exception did not insulate the government from liability. We held that Dr. Baer's failure to warn of the dangers presented by the research conditions was the type of conduct for which congress had waived sovereign immunity, since his decision not to act did not implicate any policy considerations.

The Supreme Court summarily vacated our original opinion and remanded the case for further consideration in light of *Gaubert*, which was decided three months after our decision was filed.

## II. *GAUBERT*

In *Gaubert*, the chairman of the board and largest shareholder of a Texas thrift institution commenced suit against the United States under the FTCA, alleging negligence on the part of regulators from the Federal Home Loan Bank Board ("FHLBB") and the Federal Home Loan Bank–Dallas ("FHLB–D") in their role as supervisors for the thrift. The fifth circuit held that the discretionary function exception was inapplicable to the situation, and thus, could not be used to immunize the actions of the federal officials who had supervised the savings and loan. Citing *Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955), that court held that the discretionary function exception protected the officials' actions only until their actions became operational in nature. Thus, as soon as the officials began to participate in management decisions and assumed a role in the day-to-day affairs of the institution, the fifth circuit held, their actions could no longer be protected.

The Supreme Court reversed, however, concluding that the actions of the federal officials in *Gaubert* did merit protection under the discretionary function exception despite the fact that they were participating in the daily operation of the thrift. In doing so, the Court focused on the fifth circuit's erroneous interpretation of *Indian Towing*. It sought to abolish the perpetuation of a "nonexistent dichotomy between discretionary functions and operational activities." *Gaubert*, 111 S.Ct. at 1275. The Court stated:

A discretionary act is one that involves choice or judgment; there is nothing in that description that refers exclusively to policymaking or planning functions. Day-to-day management of banking affairs, like the management of other businesses, regularly require judgment as to

which of a range of permissible courses is the wisest. Discretionary conduct is not confined to the policy or planning level.

*Id.* Thus, the Court rejected the fifth circuit's mistaken belief that the exception could not reach decisions made at the operational or management level. *Id.*

The Supreme Court also emphasized the importance of the regulatory structure in which the government actors worked.

When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion. For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime. *The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis.*

*Id.* at 1274–75 (emphasis added). The Court thus explicitly recognized the importance of a regulatory scheme with specific policy objectives. If such a scheme delegated discretion to government agents, those actions in furtherance of stated policy objectives would be insulated from tort liability even if they were taken at a non-planning level. Therefore, the Court attempted to clarify any confusion created by *Indian Towing*, as well as stem any dispositive emphasis being placed on the distinction between planning-level decisions versus operational decisions.

## III. DISCUSSION

The government and the state (hereinafter, the "government") now argue that *Gaubert* requires a change in our application of the discretionary function exception in this case. They contend that by relying heavily on *Indian Towing*, we erroneously emphasized the importance of considering policy factors as a prerequisite for granting protection from liability, and they focus on that part of the Supreme Court's opinion that emphasizes that discretionary acts are not to be confined to just policy-making or planning decisions.

The government, however, confuses the Court's distinction between decisions made at a policy-making level and decisions implicating policy considerations at whatever level they might be made. *Gaubert*'s import lies in its clarification of *Indian Towing* and its rejection of any simplistic reliance on the dichotomy between planning-level actions and operational-level actions. Policy considerations, however, remain the touchstone for determining whether the discretionary function exception applies. Indeed, the Court carefully reiterated that the exception " 'protects only governmental actions and decisions based on *considerations of public policy*,' " *Gaubert*, 111 S.Ct. at 1274 (emphasis added) (quoting *Berkovitz v. United States*, 486 U.S. 531, 537, 108 S.Ct. 1954, 1959, 100 L.Ed.2d 531 (1988)), and further stated that "the actions of Government agents involving the necessary element of choice *and* grounded in the social, economic, or political goals of the statute and regulations are protected." *Id.* (emphasis added).

Furthermore, we did not rely on the "nonexistent dichotomy" between planning-level decisions and operational decisions as did the fifth circuit. We did look to precedent to help clarify the distinction between governmental decisions that were policy-oriented and those that were not. Although some of the cases we relied on, including *Indian Towing*, focused on initial planning-level decisions that flowed from balancing policy factors, as distinguished from implementation decisions that did not carry policy implications, *see Andrulonis*, 924 F.2d at 1218–19, we did recognize that "[s]ometimes, even the execution of a policy decision is subject to protection by the discretionary function exception". *Id.* at 1219 (citing *United States v. S.A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 820, 104 S.Ct. 2755, 2768, 81 L.Ed.2d 660 (1984)). Our determination that "the key inquiry is whether the

decisions, be they initial decisions or implementation decisions, were necessarily susceptible to policy analysis", *id.*, is entirely consistent with the Supreme Court's view that *"[t]he focus of the inquiry is * * * on the nature of the actions taken and on whether they are susceptible to policy analysis."* *Gaubert,* 111 S.Ct. at 1275 (emphasis added).

The government also argues that Dr. Baer's decision to allow the experiment to proceed was necessary to fulfill the policy objectives of the CDC and as such, should be protected by the exception. It interprets *Gaubert* as focusing on whether the government agent was allowed discretion, not whether he actually contemplated different policy implications. For this proposition, the government relies on the Court's language, quoted above, which gives government agents a presumption of discretion when they are fulfilling policy objectives as provided within a regulatory framework. *See id.* at 1274–75. In our view, the government's argument cuts too broad a swath. Its attempt to sweep all of Dr. Baer's acts and omissions under the rug of broad CDC policy would effectively insulate virtually all actions by a government agent from liability, excepting only those where the agent had acted contrary to a clear regulation.

*Gaubert,* however, does not cut so broadly. There, a clear regulatory scheme entrusted government agents with discretionary powers to effectuate a clearly-defined policy. Here, we have neither a regulatory framework nor a defined policy that could serve as the basis for infusing all decisions of CDC employees with policy implications. Indeed, it is hardly conceivable that the CDC would ever have a policy to keep silent about obvious, easily-correctable dangers in experiments using drugs supplied by the CDC. Although we recognize that Dr. Baer is a distinguished, high-level official with substantial discretionary authority to shape policy at the CDC, we do not agree that his negligent omission in this case could implicate any policy considerations and thereby warrant protection under the discretionary function exception.

This situation is much closer to the type of circumstance described in a footnote in *Gaubert,* where the Court states:

> There are obviously discretionary acts performed by a Government agent that are within the scope of his employment but not within the discretionary function exception because these acts cannot be said to be based on the purposes that the regulatory regime seeks to accomplish. If one of the officials involved in this case drove an automobile on a mission connected with his official duties and negligently collided with another car, the exception would not apply. Although driving requires the constant exercise of discretion, the official's decisions in exercising that discretion can hardly be said to be grounded in regulatory policy.

*Gaubert,* 111 S.Ct. at 1275 n. 7. Looking at the "nature of the conduct" in this situation, we do not see how Dr. Baer's negligent omission could possibly have been grounded in CDC's policy scheme. Nothing indicates that CDC policy required, or even encouraged, Dr. Baer to ignore unsafe laboratory conditions and thereby unnecessarily place the lives of laboratory workers at risk in order to further a scientific cause or any other objective of the government. The general policy of wanting to eradicate rabies and granting officials some discretion to achieve those ends is far too broad and indefinite to insulate Dr. Baer's negligent conduct in the circumstances of this case. Thus, Dr. Baer's action "cannot be said to be based on the purposes the regulatory regime seeks to accomplish." *Id.*

## IV. CONCLUSION

For the foregoing reasons, upon reconsideration after remand, we reinstate our previous decision in which we affirmed all aspects of the district court judgment, except for that portion calculating the setoff from the allocation of settlement proceeds, which we reversed and remanded for further proceedings.