John R. DOUD, Sr., Plaintiff,

v.

UNITED STATES of America; Morrison–Knudsen Company, Inc.; Huber, Hunt and Nichols, Inc.; Martin K. Eby Construction Company, Inc.; and Tibbets Plumbing and Heating Co., Defendants.

UNITED STATES of America, Third–Party Plaintiff,

v.

BLACK RIVER CONSTRUCTORS, INC., Third–Party Defendant.

No. 90–CV–543.

United States District Court, N.D. New York.

July 10, 1992.

McClung Peters & Simon, Albany, N.Y., for plaintiff; Stephen M. Kerwin, of counsel.

Amdursky Pelky Fennell & Wallen, Oswego, N.Y., for defendants; Joseph E. Wallen, of counsel.

Gary L. Sharpe, U.S. Atty., Syracuse, N.Y., for U.S.; William Larkin, Asst. U.S. Atty., of counsel.

## MEMORANDUM–DECISION AND ORDER

McCURN, Chief Judge.

### INTRODUCTION

Plaintiff commenced this action in May 1990 for damages resulting from injuries

he sustained in a fall during the course of his employment at a worksite at Fort Drum, New York, in July 1988. In November 1990, defendants, Morrison–Knudsen Co. ("M–K"), Martin K. Eby Construction Co. ("Eby"), and Huber, Hunt & Nichols, Inc. ("HHN"), moved for summary judgment pursuant to Fed.R.Civ.P. 56 on the grounds that they had formed a joint venture called Black River Constructors Inc. ("Black River") through which they were all plaintiff's employer at the time of this accident. Plaintiff opposed this motion claiming that the defendants had not formed a joint venture and that, therefore, they were not his employer at the time he was injured. Additionally, plaintiff cross-moved to amend his complaint to include Tibbetts Plumbing and Heating Co. ("Tibbetts") as a defendant in this action. After hearing oral argument on these motions, this court issued an order denying defendants' motion for summary judgment without prejudice and with leave to renew after the parties had sufficient time to engage in discovery on the issue of whether or not defendants had, in fact, formed a joint venture called Black River. In addition, the court granted plaintiff's motion to amend his complaint to add Tibbetts as a defendant.

Now, defendants, M–K, Eby, and HHN, renew their motion for summary judgment pursuant to Fed.R.Civ.P. 56. In addition, defendant Tibbetts moves for summary judgment pursuant to Fed.R.Civ.P. 56 on the grounds that: (1) it is not liable to plaintiff under New York Labor Law sections 200, 240, and 241; (2) it is not liable to plaintiff under 29 C.F.R. sections 1910.28 and 1910.29; and (3) it owes no duty to plaintiff upon which any finding of negligence can be based. See Tibbetts' Memorandum of Law. Finally, the United States moves for summary judgment pursuant to Fed.R.Civ.P. 56 on the grounds that: (1) pursuant to the Federal Tort Claims Act ("FTCA"), the United States is not liable for the negligent acts of its independent contractors; (2) pursuant to the FTCA, sovereign immunity is not waived for any claim based on a discretionary function;

and (3) no liability exists under New York Labor Law sections 200, 240, and 241.

In a letter to this court dated December 20, 1991, plaintiff asserted that he had no opposition to defendants', M–K, Eby, and HHN, motion for summary judgment. See Plaintiff's Letter Dated December 20, 1991. Therefore, the court granted summary judgment to these defendants in an order dated January 28, 1992. To the contrary, plaintiff opposes both Tibbetts' and the United States' motions for summary judgment.

## BACKGROUND

Plaintiff, John R. Doud, Sr., began working as a carpenter for Black River in May of 1988. At the time of his employment, Black River was the general contractor for a large construction project pursuant to its contract with the United States for rebuilding certain portions of Fort Drum in Watertown, New York.

On July 27, 1988, Doud was working at a waste water treatment plant near the Wheeler Sack Airfield at Fort Drum. At the time of his accident, Doud was in the process of removing some concrete forming material from inside a twelve foot deep shaft at the water treatment plant. Prior to this assignment, the shaft had contained ordinary scaffolding; however, plaintiff had replaced this scaffolding with a makeshift scaffold which he fashioned out of ordinary $2 \times 6$ boards.

Plaintiff was standing on the makeshift scaffold as he performed his assigned work. During the course of this work, the scaffold collapsed; and Doud fell approximately ten feet to the bottom of the shaft, landing upon concrete debris that he alleges Tibbetts' employees left there. As a result of this fall, Doud sustained "a permanent partial disability with loss of foot motion and faced the possible spontaneous recurrence of foot and back pain without reinjury." See Plaintiff's Memorandum of Law in Opposition to Defendants', M–K, Eby, and HHN, Motion for Summary Judgment at 4.

## DISCUSSION

### A. Summary Judgment Standard

 Summary judgement is appropriate when the court is convinced that there are no genuine issues of material fact and the movants are entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986). The mere existence of some alleged factual dispute, however, will not defeat such a motion. *Id.* at 248, 106 S.Ct. at 2510, 91 L.Ed.2d at 211. Rather Rule 56 of the Federal Rules of Civil Procedure requires that there be no *genuine* issue of *material* fact. *Id.* at 248, 106 S.Ct. at 2510, 91 L.Ed.2d at 211 (emphasis in original). The substantive law underlying the cause of action will identify which facts are material; i.e., those facts that might affect the outcome of the suit under the governing law. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510, 91 L.Ed.2d at 211. Nevertheless, it should be remembered that materiality is only a criterion for categorizing factual disputes in relation to the legal elements of the claim and is not a criterion for evaluating the evidence underlying the disputes. *Id.*

 Moreover, if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party, summary judgment is not appropriate. *Id.* at 248, 106 S.Ct. at 2510, 91 L.Ed.2d at 211; *see also General Elec. Co. v. New York Dep't of Labor,* 936 F.2d 1448, 1452 (2d Cir.1991). Thus, in deciding whether to grant summary judgment, the court's function is to determine whether there is a genuine issue for trial and not to weigh the evidence and determine the truth of the matter. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511, 91 L.Ed.2d at 212. Accordingly, the court must leave credibility determinations, weighing of evidence, and drawing of legitimate inferences from the facts to the jury. *Id.* at 255, 106 S.Ct. at 2513, 91 L.Ed.2d at 216. Furthermore, in making its determination, the court must accept the non-movant's evidence as true and must draw all justiciable inferences in its favor. *Id.* This does not mean, however, that the non-movant may rest on mere allegations or the denials of its pleadings. Rather, it must present affirmative evidence from which a jury *might* return a verdict in its favor. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514, 91 L.Ed.2d at 216 (emphasis added). This does not mean, however, that the non-movant's affirmative evidence must *ensure* that the jury will return a verdict in its favor. *See Anderson,* 477 U.S. at 257, 106 S.Ct. at 2514, 91 L.Ed.2d at 217 (emphasis added). Consequently, it is with these precepts in mind that the court must determine whether the United States and Tibbetts are entitled to summary judgment.

### B. United States' Motion for Summary Judgment

In his complaint, plaintiff alleges that this court has jurisdiction over the United States pursuant to 28 U.S.C. § 1346 and the FTCA, 28 U.S.C. §§ 2671–2680. *See* Plaintiff's Complaint at ¶ 7. In addition to this FTCA claim, plaintiff alleges that the United States violated "various statutes, rules and regulations, including, but not limited to, New York State Labor Law Sections 200, 240, 241, as well as 29 C.F.R. 1910.28 and 29 C.F.R. 1910.29." *See* Plaintiff's Complaint at ¶ 17.

In response to these allegations, the United States now moves for summary judgment on two grounds. First, it argues that the United States is not liable under the FTCA for the acts of its independent contractor, Black River, or for the negligence of its own employees because of the FTCA's discretionary function exception. *See* Plaintiff's Memorandum of Law at 7. Secondly, the United States argues that New York Labor Law does not provide a basis for imposing liability upon it. *See id.* at 21. The court will discuss each of these issues in turn.

#### 1. Federal Tort Claims Act

##### a. Independent Contractor Defense

 Section 1346 states in pertinent part that

[t]he district courts, ..., shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, ..., for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C.A. § 1346(b) (West 1976).

Moreover, for purposes of the FTCA, section 2671 defines "employee of the government" to include "officers or employees of any federal agency, ..." 28 U.S.C.A. § 2671 (West 1965). In addition, this section defines "federal agency" to include "executive departments and independent establishments of the United States, and corporations primarily acting as, instrumentalities or agencies of the United States but does not include *any contractor* with the United States." *Id.* (emphasis added). Accordingly, the FTCA expressly precludes the United States from being held liable for the negligence of its independent contractors. Thus, any such claims are barred by the doctrine of sovereign immunity. *Moody v. United States,* 753 F.Supp. 1042, 1046 (N.D.N.Y.1990) (and cases cited therein).

Plaintiff does not dispute the fact that Black River was an independent contractor of the United States. Therefore, pursuant to the FTCA, the United States could not be held liable for the negligence of Black River or any of Black River's employees because they are not employees of the United States. Plaintiff concedes as much in his memorandum of law when he states that

[p]laintiff does not attempt to hold the United States liable for the negligent act of its independent contractors. Rather, plaintiff asserts that the *claim is direct-*

ed against the government's own negligent conduct. Specifically, plaintiff asserts that government employees acted negligently in failing to comply with and enforce regulations as required under the law. Moreover, the government's obligation to ensure that safety measures were followed during the project were non-delegable given the inherently dangerous nature of the work. Finally, the United States as owner of Fort Drum, had a duty to exercise reasonable care under the circumstances in maintaining its property in a safe condition so as to prevent injury to persons entering the property.

*See* Plaintiff's Memorandum of Law at 3–4 (emphasis added).

Accordingly, the court grants the United States' motion for summary judgment to the extent that plaintiff's claims attempt to hold the United States liable for the negligent acts or omissions of its independent contractor or that contractor's employees.

### b. Negligence of the Government's Own Employees

Pursuant to 28 U.S.C. § 1346(b), the United States' tort liability is limited to those torts committed by its employees "under circumstances where the United States if a private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Moody,* 753 F.Supp. at 1048 (quoting *Akutowicz v. United States,* 859 F.2d 1122, 1125 (2d Cir.1988); *C.P. Chemical Co. v. United States,* 810 F.2d 34, 37 (2d Cir.1987); *Caban v. United States,* 728 F.2d 68, 72 (2d Cir.1984)). Thus, because this accident occurred in New York State, New York law applies. In this regard, Doud alleges that the United States breached its nondelegable duty to provide a person engaged in an inherently dangerous activity with a safe place to work as required by New York Labor Law sections 200, 240, and 241.[1] New York Labor Law section 240 imposes absolute liability only

---

1. Plaintiff did not discuss section 200 either in his memorandum of law in opposition to the United States' motion or at oral argument. Therefore, the court assumes that plaintiff con-

cedes that he does not have a cause of action based upon this section of New York Labor Law.

upon "a person employing or directing another." *Lipka v. United States*, 369 F.2d 288, 292 (2d Cir.1966), *cert. denied*, 387 U.S. 935, 87 S.Ct. 2061, 18 L.Ed.2d 997 (1967). On the other hand, section 241(6) imposes a duty on owners irrespective of their control or supervision of the work site. *DaBolt v. Bethlehem Steel Corp.*, 92 A.D.2d 70, 459 N.Y.S.2d 503 (4th Dep't. 1983). In apparent recognition of the well-settled rule that the United States cannot be held liable without fault, *Laird v. Nelms*, 406 U.S. 797, 92 S.Ct. 1899, 32 L.Ed.2d 499 (1972), plaintiff appears to concede that the Government cannot be held liable under New York Labor Law section 240. However, plaintiff contends that the United States can be held liable under the FTCA for a breach of its responsibility under section 241(6) if it fails "to provide reasonable and adequate protection and safety to the person employed therein or lawfully frequenting such places." *See* Plaintiff's Memorandum of Law at 8. The court is not persuaded.

■ Even though section 241(6) does not impose absolute liability, it does impose a nondelegable duty on the owner and general contractor to provide employees with a safe working environment. *See Yarter v. General Elec. Co.*, 123 Misc.2d 736, 474 N.Y.S.2d 390 (Sup.Ct.1984). As such, this section directly conflicts with the FAR regulations that permit, and in certain circumstances mandate, delegations of safety responsibilities to general contractors by United States' agencies. When faced with a similar conflict, the court in *Yarter* held that New York Labor Law was pre-empted to the extent that it imposed a duty on the federal government. *Id.* 474 N.Y.S.2d at 392. Therefore, because the Government delegated its responsibility for safety to Black River pursuant to the FAR regulations, its employees have no duty under New York Labor Law to provide a safe working environment for plaintiff. Absent a duty to plaintiff, the United States cannot be held liable under a negligence theory for plaintiff's injuries.

In the alternative, plaintiff argues that, in spite of this general principle, the fact that he was involved in an inherently dangerous job creates an exception to this general rule. As support for this contention, he cites *Thorne v. United States*, 479 F.2d 804 (9th Cir.1973). However, the court in *Thorne* was interpreting California law, not New York law, and thus its holding is not dispositive of this case. Moreover, the Second Circuit has held that no such exception exists. In *Lipka*, the court specifically held that New York does not allow an independent contractor's employees to recover from the contractee on the ground that the work contracted for was inherently dangerous. *Id.* (citing *Galbraith v. United States*, 296 F.2d 631 (2d Cir.1961); *Wallach v. United States*, 291 F.2d 69 (2d Cir.), *cert denied*, 368 U.S. 935, 82 S.Ct. 373, 7 L.Ed.2d 197 (1961)). Therefore, the court concludes that 48 C.F.R. § 15.236–13 pre-empts New York Labor Law sections 240 and 241(6) to the extent that this federal regulation permits the Government to delegate its responsibility for safety to general contractors such as Black River even when the activity involved is inherently dangerous. *See Moody*, 753 F.Supp. at 1048 n. 9; *Maltais v. United States*, 546 F.Supp. 96, 101 (N.D.N.Y.1982); *Berghoff v. United States*, 737 F.Supp. 199, 203–04 (S.D.N.Y.1989). Having contractually done so, the United States cannot be held liable for plaintiff's injuries under New York Labor Law sections 240 and 241(6). Accordingly, the court grants the United States' motion for summary judgment pursuant to Fed.R.Civ.P. 56 as to plaintiff's second cause of action based on the United States' alleged violations of New York Labor Law sections 200, 240, and 241.

### 2. Discretionary Function Exception

■ Although the FTCA provides a limited waiver of the United States' sovereign immunity to suit for the negligent actions of its employees, there are exceptions to this waiver. Pursuant to section 2680(a), the FTCA does not apply to

> any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or

based upon the exercise or performance or the failure to exercise or perform a *discretionary function* or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C.A. § 2680(a) (West 1965) (emphasis added).

At issue here is whether the United States' delegation of its responsibility for safety to its general contractor, Black River, is a discretionary function. The contract between Black River and the United States incorporated several clauses from the Federal Acquisition Regulations ("FAR"), including 48 C.F.R. § 52.236.13 Accident Prevention.[2] In *Maltais v. United States*, 546 F.Supp. 96 (N.D.N.Y.1982), *aff'd without published opinion*, 729 F.2d 1442 (2d Cir.1983), this court was faced with a similar delegation of responsibility. In *Maltais*, the plaintiff was an employee of a general contractor who had entered into a contract with the United States. During the course of his employment, the plaintiff fell to his death from a building owned by the United States. The plaintiff sought to recover for his injuries pursuant to the FTCA and New York Tort Law. *Id.* at 98. As in the present case, pursuant to its statutory authority, the government agency had contractually delegated its responsibility for safety to the general contractor. *Id.* at 101. The court concluded that such delegation was a discretionary act within the meaning of 28 U.S.C.

§ 2680(a) and, as such, gave rise to an exemption from FTCA liability. *Id.*

More recently, this court was faced with a situation remarkably similar to the present one. In *Moody*, the contract at issue included an Accident Prevention Clause that, like the present one, specifically delegated the primary safety obligation to the contractor and reserved for the Government an oversight role. As in this case, the only mandatory, non-discretionary function was the United States' duty to notify the contractor if any noncompliance with the applicable safety regulations was detected. In the present case, as in *Moody*, there is no allegation that the United States failed to notify Black River once it discovered the contractor's noncompliance. Rather, plaintiff alleges that the United States negligently performed its inspections.

FAR section 52.236–13, as it is incorporated in the contract, does not impose any mandatory obligations on the United States with respect to the method the Government's employees use to detect noncompliance nor does it specify any particular course of action, other than notification, once such noncompliance is discovered. Rather, it leaves such determinations entirely to the discretion of the Government's employees. Under these circumstances, the court adheres to its conclusion in *Moody* that the Government's "discretion in determining the manner in which safety violations would be detected implicates a

**2.** FAR 52.236–13—Accident Prevention.

(a) In performing this contract, the Contractor shall provide for protecting the lives and health of employees and other persons; preventing damage to property, materials, supplies, and equipment; and avoiding work interruptions. For these purposes, the Contractor shall—

(1) Provide appropriate safety barricades, signs and signal lights;

(2) Comply with the standards issued by the Secretary of Labor at 29 C.F.R. Part 1926 and 29 C.F.R. Part 1910; and

(3) Ensure that any additional measures the Contracting Officer determines to be reasonably necessary for this purpose are taken.

(b) If this contract is with any Department of Defense agency or component, the Contractor shall comply with all pertinent provisions of the U.S. Army Corps of Engineers safety and

health requirements manual EM 385–1–1, dated [April 1981]....

(d) The Contracting Officer shall notify the Contractor of any noncompliance with these requirements and of the corrective action required. This notice, when delivered to the Contractor or the Contractor's representative at the site of the work, shall be deemed sufficient notice of the noncompliance and corrective action required. After receiving the notice, the Contractor shall immediately take corrective action. If the Contractor fails or refuses to take corrective action promptly, the Contracting Officer may issue an order stopping all or part of the work until satisfactory corrective action has been taken....

(e) The Contractor shall be responsible for its subcontractors' compliance with this clause. *See* United States' Memorandum of Law at 10 n. 3; 48 C.F.R. § 52.236–13 (1991).

significant public policy judgment of a type which the discretionary function exception was intended to encompass." *Moody,* 753 F.Supp. at 1053. Furthermore, even if the Government's employees negligently performed their inspections as plaintiff alleges, this fact alone would not remove the challenged conduct from the protection of the discretionary function exception. *See Moody,* 753 F.Supp. at 1049 n. 12 (citing *Ayer v. United States,* 902 F.2d 1038, 1041 (1st Cir.1990); *accord Flynn v. United States,* 902 F.2d 1524, 1530 (10th Cir.1990)).

The cases cited by plaintiff to support his contention that the Government's conduct is not protected by the discretionary function exception are easily distinguishable. The first case, *Camozzi v. Roland/Miller & Hope Consulting Group,* 866 F.2d 287 (9th Cir.1989), also was relied on by the plaintiff in *Moody.* Although the court will not repeat the facts of *Camozzi* here, suffice it to say that they were very similar to those present in this case. Nevertheless, the court concludes that the distinction made by this court in *Moody* is applicable to the present situation; i.e., the contract at issue here, unlike the one in *Camozzi,* does not contain policy choices with respect to how the Government is to effectuate its obligations to oversee the contractor's safety compliance. Rather, as stated above, these decisions are left to the discretion of the Government's employees. Accordingly, *Camozzi* does not support plaintiff's contention that the Government's conduct is not protected by the discretionary function exception.

Plaintiff also cites *McGarry v. United States,* 549 F.2d 587, 591 (9th Cir.1976), *cert. denied,* 434 U.S. 922, 98 S.Ct. 398, 54 L.Ed.2d 279 (1977), to support his position. The problem with plaintiff's reliance on *McGarry* is that the court applied the law of *Thorne* to the facts of that case. As stated above, the Second Circuit, unlike the Ninth, has not adopted the inherently dangerous activity exception to the general principle that the Government may, pursuant to federal regulations, delegate its responsibility for safety to its independent contractors.

Another, and more serious, problem with plaintiff's reliance on *McGarry* is that the court's holding in that case was based, at least in part, on its conclusion that "the discretionary function exception is limited to decisions made at the planning rather than the operational level." *McGarry,* 549 F.2d at 591 (quoting *Driscoll v. United States,* 525 F.2d 136, 138 (9th Cir.1975)). After the Supreme Court's recent decision in *United States v. Gaubert,* —— U.S. ——, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991), such a dichotomy is legally insupportable. In *Gaubert,* the Supreme Court specifically held that discretionary conduct is not confined to the policy or planning level. *Id.* 111 S.Ct. at 1275. Accordingly, plaintiff cannot rely on *McGarry* to support his contention that the Government's conduct is not protected by the discretionary function exception.[3]

---

**3.** Although neither side addressed the issue, the court feels compelled to mention the Second Circuit's recent decision in *Andrulonis v. United States,* 952 F.2d 652 (2d Cir.1991), on remand from the United States Supreme Court in light of its opinion in *Gaubert.* The Second Circuit, as well as this court, had previously held that the discretionary function exception did not apply to the facts of that case.

*Andrulonis* involved a bacteriologist who had contracted the disease of rabies while conducting a laboratory experiment. As a result of this disease, he had suffered severe and permanent injuries. The accident occurred during an experiment at the state-operated Griffin Laboratories under the supervision of a scientist employed by the New York State Department of Health. The rabies viral strain used in the experiment had been provided by Dr. Baer, a

federal government scientist from the Center for Disease Control, who was present to observe the experiment. This court held that the Government was liable in negligence for plaintiff's injuries based on its conclusion that Dr. Baer had a duty to warn about the obviously dangerous conditions he should have noticed in the laboratory when the rabies virus he had supplied was being used. This court also found that the discretionary function exception was inapplicable under the circumstances.

The Second Circuit affirmed this court's finding of liability against the Government and agreed that the discretionary function exception did not apply. Its decision was based, in part, on its belief that Dr. Baer's failure to act did not implicate any policy considerations. After remand from the Supreme Court, the Second Circuit reinstated its original holding because even in light of *Gaubert,* it believed that the situation

Having reviewed the applicable statutes and case law, the court concludes that the procedures used by the Government's employees to ensure Black River's compliance with the applicable safety regulations, even if negligent, fall within the discretionary function exception of the FTCA. Accordingly, the court grants the United States' motion for summary judgment as to plaintiff's first cause of action based on negligence as barred by section 2680(a)'s exception to FTCA liability.[4]

## C. Tibbetts' Motion for Summary Judgment

Tibbetts moves for summary judgment on three grounds. First, it argues that it is not subject to liability for plaintiff's injuries under New York Labor Law sections 200, 240, and 241. Second, it contends that it has no liability for plaintiff's injuries under 29 C.F.R. sections 1910.28 and 1910.-29. Finally, Tibbetts claims that it owes no duty to plaintiff upon which any finding of negligence can be based. At oral argument, plaintiff stipulated that he had no opposition to Tibbetts' motion for summary judgment as to those claims premised on violations of New York Labor Law sections 200, 240, and 241 and 29 C.F.R. sections 1910.28 and 1910.29. Therefore, the only claims remaining are those grounded in negligence.

In order to state a cause of action for negligence, plaintiff must demonstrate (1) that defendant had a duty to plaintiff, (2) that defendant breached that duty, and (3) that this breach of duty caused plaintiff's injury. Plaintiff claims that Tibbetts had a duty to clean up the concrete debris at the bottom of the shaft which resulted from holes which Tibbetts' employees punched through or enlarged in the shaft. *See* Plaintiff's Memorandum of Law in Opposition to Tibbetts' Motion at 4. As support for this claim, plaintiff points to the subcontract between Black River and Tibbetts. Paragraph 7 of this agreement states in pertinent part that

> [s]ubcontractor will clean up and remove from the work area as directed by the Contractor all rubbish and debris resulting from its work and shall clean up to the satisfaction of the contractor, dirt, grease, machine marks, etc. from walls, ceilings, floors, fixtures, etc. deposited or placed by or resulting from work....

*See* Hartz Affidavit, Exhibit A at ¶ 27; Plaintiff's Memorandum of Law in Opposition to Tibbetts' Motion at 9.

To the contrary, Tibbetts claims that Black River was responsible for clearing away the concrete debris at the bottom of the shaft. In support of its position, Tibbetts cites the deposition testimony of Brayton Foote, an employee of Black River, who stated that it was his job to remove this debris and that he had done so in other shafts. *See* Foote Deposition at 52.

Although the question of whether a duty exists is a question of law, the

was similar to one described in a footnote in *Gaubert* in which the Court had stated that

> There are obviously discretionary acts performed by a Government agent that are within the scope of his employment but not within the discretionary function exception because these acts cannot be said to be based on the purposes that the regulatory regime seeks to accomplish. If one of the officials involved in this case drove an automobile on a mission connected with his official duties and negligently collided with another car, the exception would not apply. Although driving requires the constant exercise of discretion, the official's decisions in exercising that discretion can hardly be said to be grounded in regulatory policy.

*Gaubert,* 111 S.Ct. at 1275, n. 7.

Unlike the situation in *Andrulonis,* the one present here involves acts which are based on a regulatory scheme. The FARs provide that the Government should delegate authority for safety to the contractor and retain for itself only an oversight obligation. In carrying out this oversight function, the FAR provides no set procedure but rather leaves such decisions to the discretion of the employees responsible for such oversight. Therefore, unlike Dr. Baer's failure to warn in *Andrulonis,* the Government's acts here in overseeing the contractor's compliance with the safety regulations are protected by the discretionary function exception.

4. This same conclusion applies to the claims in plaintiff's second cause of action which are based on the United States' alleged violations of 29 C.F.R. § 110.28 and 29 C.F.R. § 110.29. The United States specifically delegated responsibility for complying with these particular regulations to Black River in its contract pursuant to 48 C.F.R. § 52.236–13.

question of who has the duty is a question of fact. Based on the conflicting evidence on this issue, the court concludes that a genuine issue of material fact exists as to whose responsibility it was to clean up the concrete at the bottom of the shaft. Accordingly, the court denies Tibbetts' motion for summary judgment as to plaintiff's first cause of action based on common law negligence.

## CONCLUSION

For the reasons stated above, the court grants the United States' motion for summary judgment pursuant to Fed.R.Civ.P. 56. As to plaintiff's first cause of action based on negligence, the court concludes that the Government's delegation of its responsibility for safety to Black River was a discretionary act within the meaning of 28 U.S.C. § 2680(a). Therefore, any negligence related to this delegation is exempt from liability under the FTCA. As to plaintiff's claim that the United States violated its non-delegable duty to provide plaintiff with a safe working environment under New York Labor Law sections 240 and 241(6), the court holds that these statutes are pre-empted by 48 C.F.R. § 52.236–13 to the extent that they impose a duty on the United States. Thus, having delegated its duty for safety to Black River, the United States has no duty to plaintiff under New York Labor Law sections 240 and 241(6).

Finally, the court concludes that a genuine issue of material fact exists as to whether it was Tibbetts' responsibility to clean up the concrete debris at the bottom of the shaft. Accordingly, the court denies Tibbetts' motion for summary judgment as to plaintiff's first cause of action based on common law negligence. However, because plaintiff concedes that summary judgment is appropriate with respect to its other claims against Tibbetts, the court grants Tibbetts' motion for summary judgment as to those claims.

IT IS SO ORDERED.