**Asa A. CLARK, IV, Administrator of the Estate of Matthew Clark,**

v.

**UNITED STATES of America, DEPARTMENT OF the ARMY.**

No. 91–459–JD.

United States District Court, D. New Hampshire.

Sept. 30, 1992.

Donald J. Perrault, Manchester, N.H., for plaintiff.

Gretchen Leah Witt, Asst. U.S. Atty., Concord, N.H., for defendant.

## ORDER

DiCLERCIO, Acting Chief Judge.

Plaintiff Asa A. Clark, as administrator of the estate of Matthew Clark, has filed this action alleging that defendant United States of America, Army Corps of Engineers, is liable under the Federal Tort Claims Act for the wrongful death of Matthew Clark caused by the negligent acts or omissions of defendant's employees. Pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), defendant has moved to dismiss plaintiff's complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. In the alternative, defendant has moved for summary judgment in its favor pursuant to Fed. R.Civ.P. 56.

The court notes at the outset that it appreciates the gravity of the plaintiff's loss. However, the court has determined that the defendant's motion to dismiss should be granted because the court has no jurisdiction to hear plaintiff's claim.

### Facts

At the time of the accident at issue in this lawsuit, the Strategic Air Command hangar at Pease Air Force Base was under contract for repairs. In November 1987, the Army Corps of Engineers ("Corps"), which was overseeing the project management of the repairs at the hangar, entered into a contract with J.C.N. Construction Company ("JCN") to execute certain repairs to the hangar. JCN hired Roof Systems of Maine, Inc. ("RSM") as the roofing subcontractor. Matthew Clark, plaintiff's son, was employed by RSM to assist in the removal of old decking at the hangar. On June 9, 1988, Mr. Clark was working on the roof of the hangar approximately 70 feet above the ground. After stepping onto one area of the roof that did not support his weight, he fell to the ground. He suffered

massive injuries as a result of the fall and died shortly thereafter.

After exhausting his administrative remedies, plaintiff filed his complaint in this court. In the first count of the complaint, plaintiff alleges that defendant, as project manager of the job site, had a duty to ensure that the general contractor and subcontractors on the job site implemented and followed safety procedures as required under the contract with the Corps. In the second count of the complaint, plaintiff alleges that defendant, once it knew the general contractor or any of the subcontractors were not in compliance with the job site safety requirements, had a duty to stop all further work at the job site until all safety violations were remedied. In both counts, plaintiff alleges that defendant breached its duty by allowing dangerous and unsafe conditions to exist, which resulted in Mr. Clark's death.

Defendant argues that plaintiff's claims are barred by the discretionary function exception to the general waiver of sovereign immunity incorporated in the Federal Tort Claims Act, thus removing this action from the court's subject matter jurisdiction. In addition, defendant argues that under the Federal Tort Claims Act, the United States cannot be liable for the torts of its independent contractors on any theory of vicarious liability or absolute liability. The defendant asks this court to dismiss plaintiff's complaint or, in the alternative, enter summary judgment in its favor. Because the court agrees that defendant's actions are shielded by the discretionary function exception, the court need not consider defendant's vicarious liability argument.

### The Corps–JCN Contract

The contract between the Corps and JCN discusses, among other things, responsibility for safety at the hangar, and contains a number of clauses borrowed from the Federal Acquisition Regulation. *See* 48 C.F.R. § 1 *et seq.* (1991). This contract places primary responsibility for safety on JCN and, by extension, its subcontractors, leaving the Corps with a limited oversight role.

Specifically at issue in this action is Contract ¶ 56, ACCIDENT PREVENTION, which provides, in pertinent part:

(a) In performing this contract, the Contractor shall provide for protecting the lives and health of employees and other persons; preventing damage to property, materials, supplies, and equipment; and avoiding work interruptions. For these purposes, the contractor shall—

(1) Provide appropriate safety barricades, signs and signal lights;

(2) Comply with the standards issued by the Secretary of Labor at 29 CFR Part 1926 and 29 CFR Part 1910; and

(3) Ensure that any additional measures the Contracting Officer determines to be necessary for this purpose are taken.

\* \* \* \* \* \*

(d) The Contracting Officer shall notify the Contractor of any noncompliance with these requirements and of the corrective action required.... After receiving the notice, the Contractor shall immediately take corrective action. If the Contractor fails or refuses to take corrective action promptly, the Contracting Officer may issue an order stopping all or part of the work until satisfactory corrective action has been taken.

\* \* \* \* \* \*

(e) The Contractor shall be responsible for its subcontractors' compliance with this clause.

### Discussion

The Federal Tort Claims Act is a broad waiver of sovereign immunity, granting district courts jurisdiction to hear tort suits against the United States for damages caused by its employees acting within the scope of their employment, where the United States, if a private party, would be liable under the law of the place where the tort occurred. 28 U.S.C.A. § 2674, 1346(b) (West 1965 & Supp.1992, West 1976 & Supp.1992). However, there are fourteen statutory exceptions to this waiver of immunity. 28 U.S.C.A. § 2680 (West 1976 & Supp.1992). Among these exceptions is the

"discretionary function" exception, which exempts

[a]ny claim based upon an act or omission of any employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C.A. § 2680(a). Because § 2680(a) is a limitation on the waiver of sovereign immunity, cases which fall within the discretionary function exception necessarily must be dismissed, as a matter of law, for lack of subject matter jurisdiction. *Attallah v. United States*, 955 F.2d 776, 783 (1st Cir.1992).

■■■ The United States Supreme Court has articulated a two-step analysis to determine whether an act or omission of a Government employee is shielded by the discretionary function exception. First, the discretionary function exception covers only acts or omissions which are discretionary in nature, that is, involving an element of judgment or choice. *United States v. Gaubert*, — U.S. —, 111 S.Ct. 1267, 1273, 113 L.Ed.2d 335 (1991). The nature of the conduct, rather than the status of the actor, governs whether the exception applies. *Id.; Attallah*, 955 F.2d at 783. If the challenged act or omission does not involve the exercise of choice or judgment, or if federal statutes, regulations, or policies specifically prescribe courses of action for an employee to follow, then the discretionary function exception does not apply. *Gaubert*, — U.S. at —, 111 S.Ct. at 1273; *Attallah*, 955 F.2d at 783.

■■■ Second, the discretionary function exception, when properly construed, pro-

tects only government actions and decisions based on considerations of public policy. *Gaubert*, — U.S. at —, 111 S.Ct. at 1273–74. A suit is barred only if a Government employee's judgment or choice furthers the purposes of a regulatory regime which gives an employee such discretion. *Id.* — U.S. —, 111 S.Ct. at 1275.[1] This requirement is imposed because the purpose of the discretionary function exception is to prevent "judicial second guessing" of legislative and administrative decisions grounded in social, economic and political policy through the medium of an action in tort. *Id.* — U.S. at —, 111 S.Ct. at 1273; *Attallah*, 955 F.2d at 783.

Before applying *Gaubert's* two-step analysis to the facts of this action, 91–459–JD, the court must consider just what it is plaintiff alleges in his complaint. Here, the court takes the factual allegations contained in the complaint as true, indulging every reasonable inference favorable to plaintiff's cause. *See Garita Hotel Ltd. v. Ponce Federal Bank*, 958 F.2d 15, 17 (1st Cir.1992). In count I, plaintiff alleges that the Corps failed to ensure JCN's and RSM's compliance with the safety provisions of the Corps–JCN contract. In count II, plaintiff alleges that the Corps, once it knew of safety violations, had a duty to issue a stop work order. The court notes that plaintiff has not alleged the Corps was aware of safety violations and breached its contractual duty to notify the contractor of these violations. The Corps was obliged only to notify JCN of safety violations and this, plaintiff concedes, the Corps did. Nor does plaintiff allege negligent inspection on the part of the Corps. For the reasons set forth below, the court finds that plaintiff's allegations are barred by the discretionary function exception.

### A. First Step—Discretionary Action

■■■ Plaintiff admits that the Corps' decision to delegate primary responsibility for

---

1. In elaborating on this point, the *Gaubert* Court explained:

There are obviously discretionary acts performed by a Government agent that are within the scope of his employment but not within the discretionary function exception.... If [a Government employee] drove an automobile on a mission connected with his official

duties and negligently collided with another car, the exception would not apply. Although driving requires the constant exercise of discretion, the official's decisions in exercising that discretion can hardly be said to be grounded in regulatory policy.

*Id.* — U.S. at — n. 7, 111 S.Ct. at 1275 n. 7.

safety to JCN while leaving itself only an oversight role, is a policy choice protected by the discretionary function exception. *See* Plaintiff's Brief at 17. Plaintiff alleges, however, that defendant failed to perform the safety functions it retained. The court believes plaintiff's argument runs afoul of both case law and the plain language of the Corp--JCN contract.

It must be noted that courts have found the Federal Acquisition Regulation ("FAR"), or contracts incorporating provisions similar to the FAR, contains significant discretion regarding the safety oversight role often retained by the United States in construction contracts. *See, e.g., Doud v. United States*, 797 F.Supp. 138, 144–45 (N.D.N.Y.1992); *Moody v. United States*, 753 F.Supp. 1042, 1051–53 (N.D.N.Y.1990). The accident prevention clause at issue in this action is taken from the FAR.

Furthermore, the plain language of the accident prevention clause does not mandate the Corps to follow a particular course of conduct with regard to its safety oversight function. The language does not prescribe specific steps the Corps must undertake to monitor the contractor's compliance with safety requirements, nor does it prescribe how and when safety violations must be brought to the contractor's attention. Most importantly, this language does not mandate the Corps to issue a stop work order. In this regard, the court notes the language of the accident prevention clause uses discretionary, not mandatory, language concerning the decision to issue a stop work order. The clause states that the "Contracting Officer *may* issue an order stopping all or part of the work . . .." if the contractor fails to respond to the notification by correcting safety deficiencies. Contract ¶ 56 (emphasis added). In sum, the accident prevention clause

> does not impose any mandatory obligations on the United States with respect to the method the Government's employees use to detect noncompliance nor does

it specify any particular course of action, other than notification, once such noncompliance is discovered. Rather, it leaves such determinations entirely to the discretion of the Government's employees.

*Doud v. United States*, 797 F.Supp. 138, 144 (N.D.N.Y.1992).[2]

Plaintiff argues that language in the accident prevention clause, particularly that which states that "[t]he Contracting Officer shall notify the Contractor of any noncompliance with these requirements and of the corrective action required," removes the Corps' discretion. The cases plaintiff cites to support his view are easily distinguished.

For example, plaintiff cites *Camozzi v. Roland/Miller and Hope Consulting Group*, 866 F.2d 287, 287–88 (9th Cir.1989), in which the Ninth Circuit held that the discretionary function exception did not shield the United States from liability. The plaintiffs in *Camozzi* alleged that their injuries were caused by the Government's negligent performance of the safety obligations it retained in a construction contract. *Id.* at 288. In *Camozzi*, the contract between the Government and the contractor to whom the government had delegated its oversight responsibilities required the contractor to make daily inspections at the construction site. Specifically, the contractor was to make daily inspections of 35 listed items, including the floor openings through which plaintiffs fell and were injured. *Id.* at 289. The *Camozzi* court noted that

> [t]he alleged negligence upon which plaintiffs rely—the negligence of [the government] in performing its retained safety functions—involved no policy choices. Failure to inspect floors for uncovered and unguarded openings, for example, was not the result of a policy choice by the particular employees or agents involved. It was simply a failure to effectuate policy choices already made and incorporated in the contracts.

---

2. In *Doud,* the court held that contract language identical to the language at issue in this action shielded the Government from liability under

the discretionary function exception to the Federal Tort Claims Act. *Doud,* 797 F.Supp. at 146.

*Id.* at 290. By contrast, the Corps in this action had no such detailed mandates for its employees to follow in policing compliance with safety requirements at Pease.

Plaintiff also directs this court to *Phillips v. United States*, 956 F.2d 1071, 1073 (11th Cir.1992), where the Eleventh Circuit held the discretionary function exception did not shield the United States from liability. In *Phillips*, the Army Corps had the responsibility for assuring job safety and accident prevention at a Georgia Air Force base. In its contract with the contractor, the Army Corps adopted a document titled "Accident Prevention Plan of Action," which detailed specific responsibilities for Army Corps employees. *Id.* This document listed among its requirements that the employees perform "field safety inspections every time they visit a construction site ... [and] to take necessary action to insure that corrective measures are taken as needed." *Id.* In addition, before work began on the project, the Army Corps required its general contractor to prepare a "job hazard analysis" for each phase of the construction. *Id.* The Army Corps was responsible for reviewing the analysis and ascertaining its adequacy. *Id.*

In *Phillips*, the Eleventh Circuit affirmed the district court's decision that the Government was not shielded from liability because the Army Corps failed to use ordinary care in carrying out its mandatory safety obligations. *Id.* at 1076. "The Army Corp's conduct did not involve a permissible exercise of policy judgment." *Id.* By contrast, the Corps in this action had no mandatory safety obligations beyond reporting safety violations to JCN.

Finally, plaintiff points to *McMichael v. United States*, 856 F.2d 1026, 1028–29 (8th Cir.1988), where the Eighth Circuit held that the discretionary function exception did not shield the government from liability where the contract at issue called for the government to provide three on-site quality assurance representatives whose "regular procedures included a fifty-one step procedures review checklist for safety compliance." The *McMichael* court noted that the discretionary function exception did not

bar plaintiff's action against the government because "the Department policy prescribed a course of action for the inspector to follow ... and the inspector had no choice but to adhere to that directive." *Id.* at 1033. In this action, however, the Corps had no prescribed course of action to follow in carrying out its oversight function.

The court concludes the Corps' actions regarding the safety violations it found at the site satisfy the first part of the *Gaubert* test because they were discretionary. *See Doud v. United States*, 797 F.Supp. at 144–45.

### B. Second Step—Public Policy Considerations

As its next step, the court must consider whether the Corps' safety oversight decisions "involved the kind of policy judgment that the discretionary function exception was designed to shield." *Gaubert,* — U.S. at ——, 111 S.Ct. at 1273. For the reasons indicated below, the court finds that they were.

The Court in *Gaubert* indicated that discretionary acts based upon statutes or regulations are presumptively policy-based. In explaining this presumption, the Court stated:

> [I]f a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations.... When established government policy, as expressed or implied by statute, regulation, or agency guidelines, allows a government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion.

*Id.* —— U.S. at ——, 111 S.Ct. at 1274. The FAR, from which the key contract provisions in this action are taken, is based upon federal statutes and thus must be granted *Gaubert's* policy-based presumption.

The FAR was promulgated pursuant to the authority conferred by the Office of Federal Procurement Policy Act. 41

**90**

U.S.C.A. §§ 401–24 (West 1987 & Supp. 1992). The Act states that

> [i]t is the policy of the United States Government to promote economy, efficiency, and effectiveness in the procurement of property and services by the executive branch of the Federal Government by ... establishing policies, procedures, and practices which will provide the Government with property and services of the requisite quality, within the time needed, at the lowest reasonable cost....

41 U.S.C.A. § 401(2). The Act created the Office of Federal Procurement Policy, 41 U.S.C.A. § 402, headed by an Administrator whose mandate includes "... provid[ing] overall direction of procurement policy." 41 U.S.C.A. § 405(a). These procurement policies are implemented in a single Government-wide procurement regulation, the FAR. *Id.*[3] With regard to planning, the FAR provides that time is an essential contract element and directs contracting officers to ensure that time of performance is factored into project decision making. 48 C.F.R. §§ 12.101(a), 12.-202 (1991). Because this language makes time an essential element of any Government project, any discretionary decision relating to time and its effect on contract performance must necessarily be grounded in the policy of the FAR. A Government employee's decision to stop work, or not to stop work, is therefore a policy decision.

The court finds the Corps' execution of its duties under the contract in this action to be consistent with this policy underlying the FAR. When the Corps observed safety violations, it reported them to JCN. The Corps was not required, as plaintiff suggests, to shut down work. "Plaintiff's claimed negligence ... is in fact directed at the manner in which they chose to implement their contractual oversight role. How that oversight role was to be exercised necessarily involved a wide range of policy concerns of a type protected by the

discretionary function exception." *Moody,* 753 F.Supp. at 1054.

In light of this discussion, the court is of the opinion that the discretion inherent in the Corps' implementation of contract clauses from FAR, particularly the accident prevention clause at issue in this action, is imbued with the same policy considerations that led to the promulgation of the FAR. *See Gaubert,* —— U.S. at ——, 111 S.Ct. at 1274–75.

### Conclusion

For the foregoing reasons, the court finds defendant's actions fall within the discretionary function exception to the Federal Tort Claims Act. As such, the court is without jurisdiction to hear plaintiff's claim. Defendant's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) (document no. 4) is granted.

SO ORDERED.

---

3. The FAR, codified in Title 48, Code of Federal Regulations, prescribes, among other things, government-wide policies, procedures and practices; government acquisition planning; contracting methods and contract types; socioeconomic programs; general contracting requirements; special categories of contracting; contract management; and standard contract clauses and forms.